IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

BRUCE CARNEIL WEBSTER,
      Movant,

v.

UNITED STATES OF AMERICA,
      Respondent.

No.    4:20-CV-633-Y
       (4:94-CR-121-Y)

**APPENDIX TO**
**RESPONSE TO WEBSTER'S MOTION TO HOLD HIS UNAUTHORIZED,**
**SUCCESSIVE 28 U.S.C. § 2255 IN ABEYANCE**

Respectfully submitted,

ERIN NEALY COX
UNITED STATES ATTORNEY

Respectfully submitted,

*s/ Jonathan Bradshaw*
Jonathan Bradshaw
Assistant United States Attorney
Colorado Bar No. 43838
1100 Commerce Street, Third Floor
Dallas, Texas 75242
Telephone: (214) 659-8600
jonathan.bradshaw@usdoj.gov

## CERTIFICATE OF SERVICE

I certify that on July 2, 2020, I filed this appendix with the clerk of court for the

U.S. District Court, Northern District of Texas through the electronic filing system which

will serve counsel for Webster, F. Italia Patti.

*s/ Jonathan Bradshaw*
Jonathan Bradshaw
Assistant United States Attorney

No. _____

_____

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

IN RE BRUCE CARNEIL WEBSTER,

Movant.

_____

## CAPITAL CASE

## MOTION FOR AUTHORIZATION TO FILE SUCCESSIVE MOTION PURSUANT TO 28 U.S.C. § 2255 IN LIGHT OF *UNITED STATES V. DAVIS*, 139 S. CT. 2319 (2019)

_____

Dorsey & Whitney LLP
Steven J. Wells
Suite 1500, 50 South Sixth Street
Minneapolis, MN 55402-1498
Telephone: (612) 340-2600
wells.steve@dorsey.com

INDIANA FEDERAL COMMUNITY DEFENDERS
Monica Foster, Executive Director
By F. Italia Patti, Assistant Federal Defender
111 Monument Circle, Suite 3200
Indianapolis, IN 46204
(317) 383-3520
italia_patti@fd.org

# TABLE OF CONTENTS

TABLE OF AUTHORITIES..............................................................................ii

SUMMARY OF ARGUMENT....................................................................1

RELEVANT PROCEDURAL HISTORY ...................................................3

I. Mr. Webster was tried and sentenced to death, and his conviction and death sentence were upheld on direct appeal. ...............................3

II. Mr. Webster's first § 2255 motion was denied.................................4

III. Mr. Webster's death sentence was vacated because he is intellectually disabled............................................................................4

ARGUMENT.....................................................................................................5

I. Mr. Webster has made a "prima facie showing" that he is entitled to relief under *Davis*. ...................................................................................5

II. *Davis* invalidated § 924(c)'s residual clause, and kidnapping resulting in death and conspiracy to commit kidnapping are not crimes of violence under the elements clause.........................................6

III. Mr. Webster is timely in seeking authorization to file his successive § 2255 motion. .....................................................................9

IV. *Davis* announced a new, previously unavailable rule of constitutional law that the Supreme Court has made retroactive to cases on collateral review. ................................................................10

A. *Davis* announced a rule of constitutional law................................10

B. *Davis* announced a new rule that was previously unavailable......10

C. *Davis* is retroactive to cases on collateral review. ..........................11

CONCLUSION ................................................................................................16

CERTIFICATE OF SERVICE..................................................................18

CERTIFICATE OF COMPLIANCE .......................................................19

## TABLE OF AUTHORITIES

### Cases

*In re Clark*, <u>554 F. App'x 276</u> (5th Cir. 2014)..........................................7

*In re Franklin*, <u>950 F.3d 909</u> (6th Cir. 2020)...................................... 12, 15

*In re Hammoud*, <u>931 F.3d 1032</u> (11th Cir. 2019) ........................ 12, 16, 18

*In re Matthews*, <u>934 F.3d 296</u> (3d Cir. 2019) ..........................................13

*In re Morris*, <u>328 F.3d 739</u> (5th Cir. 2003) ...............................................7

*In re Mullins*, <u>942 F.3d 975</u> (10th Cir. 2019)...................................... 15, 18

*In re Simpson*, <u>555 F. App'x 369</u> (5th Cir. 2014)......................................6

*In re Sparks*, <u>657 F.3d 258</u> (5th Cir. 2011)............................................3, 7

*Reyes-Requena v. United States*, <u>243 F.3d 893</u> (5th Cir. 2001)...............6

*Schriro v. Summerlin*, <u>542 U.S. 348</u> (2004)....................................... 14, 15

*Teague v. Lane*, <u>489 U.S. 288</u> (1989) ................................................ 12, 14

*Tyler v. Cain*, <u>533 U.S. 656</u> (2001)......................................... 13, 16, 17, 18

*United States v. Barraza*, <u>576 F.3d 798</u> (8th Cir. 2009) .........................10

*United States v. Barton*, <u>257 F.3d 433</u> (5th Cir. 2001) .............................9

*United States v. Bowen*, <u>936 F.3d 1091</u> (10th Cir. 2019) .......................13

*United States v. Buck*, <u>847 F.3d 267</u> (5th Cir. 2017) ...............................9

*United States v. Coleman*, <u>609 F.3d 699</u> (5th Cir. 2010).......................10

*United States v. Davis*, <u>139 S. Ct. 2319</u> (2019) .............................. passim

*United States v. Dixon*, <u>799 F. App'x 308</u> (5th Cir. 2020) ......................18

*United States v. Hayes*, <u>589 F.2d 811</u> (5th Cir. 1979) ...........................10

*United States v. Reece*, <u>938 F.3d 630</u> (5th Cir. 2019).................... passim

### Statutes

<u>18 U.S.C. § 1201</u>.............................................................................3, 9, 10

<u>18 U.S.C. § 924(c)</u>.................................................................................. passim

<u>28 U.S.C. § 2255</u>.................................................................................. passim

Movant Bruce Carneil Webster, through undersigned counsel, respectfully moves this Court for authorization under 28 U.S.C. § 2255(h)(2) to file a successive § 2255 motion in light of the Supreme Court's holding in *United States v. Davis*, 139 S. Ct. 2319 (2019), decided June 24, 2019. Mr. Webster's proposed successor motion is attached hereto as Attachment 1.[1]

## SUMMARY OF ARGUMENT

Mr. Webster is entitled to file a second or successive motion pursuant to 28 U.S.C. § 2255 because he can make a prima facie showing that he has a valid claim based on *Davis*, which announced "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255(h)(2).

Mr. Webster was convicted of an offense under 18 U.S.C. § 924(c) that, following *Davis*, is no longer cognizable as a crime. In *Davis*, the Supreme Court held that § 924(c)'s residual clause, one of two clauses

---

[1] As explained below, Mr. Webster's death sentence was vacated in 2019 because Mr. Webster is intellectually disabled. The judgment vacating his death sentence is currently on appeal. Though not currently under a valid death sentence, Mr. Webster is incarcerated on federal death row in Terre Haute, Indiana, while that appeal is pending.

defining "crime of violence" for purposes of § 924(c), was unconstitutionally vague. *Davis*, 139 S. Ct. at 2336. As such, the only constitutionally permissible definition of "crime of violence" is found in the elements clause, which defines a "crime of violence" as one that requires, as an element, the use, attempted use, or threatened use of force. § 924(c)(3)(A).

The predicate "crimes of violence" for Mr. Webster's § 924(c) conviction were kidnapping resulting in death and conspiracy to commit kidnapping. Neither kidnapping resulting in death nor conspiracy to commit kidnapping is a crime of violence under § 924(c)'s elements clause because neither crime requires, as an element, the use, attempted use, or threatened use of force.[2] Therefore, Mr. Webster satisfies the prima facie standard requiring that he show that he "might be entitled" to have his § 924(c) conviction vacated. *In re Sparks*, 657 F.3d 258, 262 (5th Cir. 2011).

---

[2] Please see the discussion in the attached proposed successive § 2255 motion, at pages 19-26.

## RELEVANT PROCEDURAL HISTORY

### I. Mr. Webster was tried and sentenced to death, and his conviction and death sentence were upheld on direct appeal.

On November 22, 1994, a superseding indictment charged Mr. Webster, along with co-defendants Orlando Hall, Demetrius Hall, Marvin Holloway, and Steven Beckley, with crimes related to the kidnapping and murder of Lisa Rene. *See* Doc. 15 (Superseding Indictment).

Specifically, Count One of the superseding indictment charged Mr. Webster with kidnapping in which a death occurred in violation of 18 U.S.C. § 1201(a)(1). Count Two charged Mr. Webster with conspiracy to commit kidnapping in violation of 18 U.S.C. § 1201(c). Count Six charged Mr. Webster with carrying a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c). The kidnapping and conspiracy charges in Counts One and Two were alleged as predicates to the § 924(c) charge in Count Six. The other counts against Mr. Webster were ultimately dismissed.

In a trial severed from his co-defendants, Mr. Webster was convicted of Counts One, Two, and Six. He was sentenced to death on Count One (kidnapping), sentenced to life imprisonment on Count Two

3

(conspiracy to commit kidnapping), and sentenced to sixty months on Count Six (the § 924(c) charge for carrying a firearm during and in relation to a crime of violence). On direct appeal, this Court affirmed Mr. Webster's convictions and sentence. *See United States v. Webster*, 162 F.3d 308 (5th Cir. 1998), *cert. denied*, 528 U.S. 829 (1999).

## II. Mr. Webster's first § 2255 motion was denied.

Mr. Webster's initial motion to vacate his conviction and sentence under 28 U.S.C. § 2255 was denied. *See Webster v. United States*, No. 4:00-CV-1646-Y, 2003 WL 23109787 (N.D. Tex. Sept. 30, 2003). This Court affirmed denial of the § 2255 motion. *United States v. Webster*, 421 F.3d 308 (5th Cir. 2005), *cert. denied*, 549 U.S. 828 (2006).

## III. Mr. Webster's death sentence was vacated because he is intellectually disabled.

In 2009, Mr. Webster moved this Court for authorization to file a successive § 2255 motion to vacate his death sentence based on newly discovered evidence of intellectual disability. The Court denied Mr. Webster's motion. *See In re Webster*, 605 F.3d 256 (5th Cir.), *cert. denied*, 562 U.S. 1091 (2010). Mr. Webster then filed a Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 in the United States District Court for the Southern District of Indiana seeking to challenge

4

his death sentence based on the same newly discovered evidence of intellectual disability. After initially denying the petition, on remand from the Seventh Circuit, the district court concluded that Mr. Webster established that he is intellectually disabled and vacated his death sentence. *See Webster v. Daniels,* 784 F.3d 1123 (7th Cir. 2015) (*en banc*); S.D. Ind. Case No. 2:12-cv-00086-JPH-MJD, Doc. 198 (06/18/19 Order) at 21. The Government's appeal of that decision is currently pending. *See* 7th Cir. Case No. 19-2683, Doc. 36 (5/21/20 Order setting oral argument).

## ARGUMENT

### I. Mr. Webster has made a "prima facie showing" that he is entitled to relief under *Davis*.

A successive § 2255 motion is cognizable when that motion is based on a "new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." § 2255(h)(2). The court of appeals must authorize a successive § 2255 motion in the district court if the movant "make[s] a 'prima facie showing' that his or her motion satisfies § 2255's requirements for second or successive motions." *Reyes-Requena v. United States,* 243 F.3d 893, 898 (5th Cir. 2001) (citing § 2244(b)(3)(c)).

5

"A 'prima facie showing' is 'simply a sufficient showing of possible merit to warrant a fuller exploration by the district court.'" *In re Simpson*, 555 F. App'x 369, 371 (5th Cir. 2014) (quoting *Reyes-Requena*, 243 F.3d at 899). The prima facie standard is satisfied if the movant puts forward minimally sufficient evidence that his motion warrants further exploration. *See In re Clark*, 554 F. App'x 276, 277 (5th Cir. 2014); *In re Morris*, 328 F.3d 739, 741 (5th Cir. 2003) (Higginbotham, J., concurring).

As such, the question at this stage of the proceedings is not whether Mr. Webster ultimately will succeed on the merits of his successive § 2255 motion. *See Morris*, 328 F.3d at 740-41. Rather, the question before this Court is whether he has "ma[de] a prima facie showing that he might be entitled to relief" based on "a new and retroactive rule of constitutional law." *Sparks*, 657 F.3d at 262.

## II. *Davis* invalidated § 924(c)'s residual clause, and kidnapping resulting in death and conspiracy to commit kidnapping are not crimes of violence under the elements clause.

The Supreme Court's recent holding in *United States v. Davis*, 139 S. Ct. 2319 (2019), invalidated a key provision of 18 U.S.C. § 924(c).

6

Section 924(c) makes it a crime for any person to use or carry a firearm during and in relation to a crime of violence.

Prior to *Davis*, § 924(c) defined "crime of violence" in two alternate clauses. The "residual clause" defined a crime of violence as a felony "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." § 924(c)(3)(B). The "elements clause" defined a crime of violence as a felony that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." § 924(c)(3)(A).

In *Davis*, the Supreme Court held that § 924(c)'s residual clause is unconstitutionally vague. 139 S. Ct. at 2336. As a result, a conviction under § 924(c) can stand only if the charged predicate crime of violence falls under the elements clause—that is, if the predicate crime requires "as an element" the intentional use of physical force or the threat or attempt of such force. *See United States v. Reece*, 938 F.3d 630, 635 (5th Cir. 2019) ("Because *Davis* rendered 18 U.S.C. § 924(c)(3)'s residual clause unconstitutional, Reece's three firearms convictions predicated on conspiracy to commit bank robbery can be sustained only if

7

conspiracy to commit bank robbery can be defined as a COV under

§ 924(c)(3)'s elements clause.").

Further, this determination must be made using the "categorical

approach." *United States v. Buck*, 847 F.3d 267, 274 (5th Cir. 2017). In

other words, the analysis must focus solely on the language of the

statute defining the elements of the charged predicate crime to

determine whether any element requires the use, attempted use, or

threatened use of violence. *Reece*, 938 F.3d at 635. The determination is

not based on the defendant's actual conduct. *Id.*

The elements of kidnapping under § 1201 are: "(1) the

transportation in interstate commerce (2) of an unconsenting person

who is (3) held for ransom or reward or otherwise, (4) such acts being

done knowingly and willfully." *United States v. Barton*, 257 F.3d 433,

439 (5th Cir. 2001). The statute states that the kidnapping can be

accomplished not only by "seiz[ing]" or "abduct[ing]," but also by

"inveigl[ing]" (i.e. persuading by ingenuity) or "decoy[ing]" (i.e. luring).

§ 1201(a).

Section 1201(a) also provides that kidnapping "shall be punished

by imprisonment for any term of years or for life and, if the death of any

person results, shall be punished by death or life imprisonment." This provision requires that a death result from the kidnapping, but does not require the intentional use of force. *See United States v. Hayes*, <u>589 F.2d 811, 821</u> (5th Cir. 1979); *United States v. Barraza*, <u>576 F.3d 798, 807</u> (8th Cir. 2009).

The elements of conspiracy to commit kidnapping under § 1201(c) are: (1) an agreement to commit a kidnapping, (2) the defendant's knowledge, and (3) an overt act to effect the kidnapping. *See* § 1201(c); *cf. United States v. Coleman*, <u>609 F.3d 699, 704</u> (5th Cir. 2010) (discussing the elements of conspiracy under § 371).

As is evident from the list of elements—and as discussed in the proposed successive § 2255 motion attached as Attachment 1—neither kidnapping resulting in death nor conspiracy to commit kidnapping has as an element the use, attempted use, or threatened use of physical force.

### III. Mr. Webster is timely in seeking authorization to file his successive § 2255 motion.

The one-year statute of limitations for asserting a claim for relief pursuant to a new, retroactive rule of constitutional law begins to run on "the date on which the right asserted was initially recognized by the

Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." § 2255(f)(3). Because Mr. Webster is filing this motion within one year of *Davis*, the motion is timely.

## IV. *Davis* announced a new, previously unavailable rule of constitutional law that the Supreme Court has made retroactive to cases on collateral review.

*Davis* (1) announced a rule of constitutional law (2) that was previously unavailable and (3) that was made retroactive to cases on collateral review by the Supreme Court. *See* § 2255(h)(2).

### A. *Davis* announced a rule of constitutional law.

*Davis*' rule was one of constitutional law. *Davis* held that 18 U.S.C. § 924(c)(3)(B) was unconstitutionally vague under the due process clause of the Fifth Amendment. *Davis*, 139 S. Ct. at 2336.

### B. *Davis* announced a new rule that was previously unavailable.

*Davis* announced a new rule. "[A] case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final." *Teague v. Lane*, 489 U.S. 288, 301 (1989). "*Davis* easily meets" the criteria for establishing a new rule, as "the result in *Davis* was not apparent to all reasonable jurists." *Reece*, 938 F.3d 630 at 634; *see also In re Hammoud*, 931 F.3d 1032, 1038

10

(11th Cir. 2019) (holding that *Davis* is a new rule because it was not dictated by precedent or apparent to all reasonable jurists); *In re Franklin*, 950 F.3d 909, 910-11 (6th Cir. 2020) (same); *United States v. Bowen*, 936 F.3d 1091, 1097-98 (10th Cir. 2019) (same); *In re Matthews*, 934 F.3d 296, 301 (3d Cir. 2019) (same).

Additionally, *Davis'* new rule was previously unavailable to Mr. Webster. The Supreme Court handed down its decision in *Davis* on June 24, 2019, well after Mr. Webster completed his direct appeal and initial § 2255 proceedings.

### C. *Davis* is retroactive to cases on collateral review.

A new, previously unavailable rule of constitutional law must also have been made retroactive to cases on collateral review by the Supreme Court. In order for this to happen, such a rule must be substantive *and* the Supreme Court must have either expressly identified the rule as retroactive or multiple Supreme Court holdings must "necessarily dictate retroactivity of the new rule." *Tyler v. Cain*, 533 U.S. 656, 666 (2001). The rule in *Davis* meets both requirements: it is substantive and its retroactivity flows from Supreme Court holdings that so dictate.

11

First, *Davis* is retroactive on collateral review because it is substantive, not merely procedural. Although not all new rules of constitutional law provide a basis for post-conviction relief, new substantive rules are retroactive. *Welch*, 136 S. Ct. at 1264; *Teague*, 489 U.S. at 307, 311.

"A rule is substantive . . . if it alters the range of conduct or the class of persons that the law punishes." *Welch*, 136 S. Ct. at 1264-65 (quoting *Schriro v. Summerlin*, 542 U.S. 348, 353 (2004)). "This includes decisions that narrow the scope of a criminal statute by interpreting its terms, as well as constitutional determinations that place particular conduct . . . beyond the State's power to punish." *Welch*, 136 S. Ct. at 1265 (quoting *Schriro*, 542 U.S. at 353).

In *Welch*, the Supreme Court found that *Johnson* was substantive and retroactive because it removed from the statute's reach people who had been subject to enhanced punishment under the ACCA solely because of that statute's now-defunct residual clause. *Id.*

This reasoning applies with even more force here. Beyond altering sentences, *Davis* invalidates convictions for people once subject to § 924(c) liability based on predicate offenses that fell solely within the

12

now-defunct § 924(c) residual clause. As such, *Davis* "narrow[s] the scope of a criminal statute" and "place[s] particular conduct . . . beyond the State's power to punish." *Welch*, 136 S. Ct. at 1265 (quoting *Schriro*, 542 U.S. at 353).

This Court has recognized that "the rule announced in *Davis* meets the standard for a new substantive rule" because "the residual clause's invalidation narrows the scope of conduct for which punishment is now available." *Reece*, 938 F.3d at 635. Other appellate courts also have found that *Davis* is substantive, and, in turn, retroactive. *See Franklin*, 950 F.3d at 911; *In re Mullins*, 942 F.3d 975, 978-79 (10th Cir. 2019); *Hammoud*, 931 F.3d at 1037-39.

Moreover, § 924(c)'s residual clause is virtually identical to, and was invalidated for precisely the same reason as, ACCA's residual clause, and the resulting effect has been the same—leaving for consideration whether a predicate crime is categorically a crime of violence under the remaining elements clause.

Second, § 2255(h)(2) imposes an additional requirement: the new rule must not only be retroactive, it must have been "made retroactive to cases on collateral review by the Supreme Court." *See* § 2255(h)(2).

13

To satisfy § 2255(h)(2), the Supreme Court must have expressly held that the new rule is retroactive on collateral review, or the Supreme Court's holdings in multiple cases must "necessarily dictate retroactivity of the new rule." *Tyler*, 533 U.S. at 666. Here, *Davis* and *Welch* together dictate retroactivity.

Justice O'Connor explained in her concurrence in *Tyler* how the Supreme Court can have made a new rule retroactive through the holdings in multiple cases:

> [I]f we hold in Case One that a particular type of rule applies retroactively to cases on collateral review and hold in Case Two that a given rule is of that particular type, then it necessarily follows that the given rule applies retroactively to cases on collateral review. In such circumstances, we can be said to have 'made' the given rule retroactive to cases on collateral review.

533 U.S. at 668-69 (O'Connor, J., concurring).

In *Welch*, the Supreme Court held that *Johnson*, which invalidated the ACCA's residual clause, established a substantive rule with retroactive application. *Welch*, 136 S. Ct. at 1265. *Davis* invalidated a nearly identical residual clause, noting, "In recent years, this Court has applied these [constitutional] principles to two statutes that bear more than a passing resemblance to § 924(c)(3)(B)'s residual clause." *Davis*, 139 S. Ct. at 2325.

14

Welch and Davis are straightforward examples of the Case One/Case Two framework that Justice O'Connor discussed in Tyler. Case One—Welch—held that the invalidation of a statutory provision on constitutional grounds applies retroactively. Case Two—Davis—announced the invalidation of a statutory provision that is functionally identical to the one addressed in Welch. The holdings of these two cases "logically permit no other conclusion than that the rule" in Davis is retroactive. Tyler, 533 U.S. at 669 (O'Connor, J., concurring).

Following this logic, this Court "recently held that Davis announced a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court." United States v. Dixon, 799 F. App'x 308, 309 (5th Cir. 2020) (citing Reece, 938 F.3d at 635).

Other courts of appeals have also held that "[b]ecause Davis has the same limiting effect on the range of conduct or class of people punishable under § 924(c) that Johnson has with respect to the ACCA, Welch dictates that Davis—like Johnson—'announced a substantive rule that has retroactive effect in cases on collateral review.'" Mullins, 942 F.3d at 979 (quoting Welch, 136 S. Ct. at 1268); see also Hammoud, 931 F.3d at 1039 (quoting Tyler, 533 U.S. at 666) ("for purposes of

15

§ 2255(h)(2), . . . taken together, the Supreme Court's holdings in *Davis* and *Welch* 'necessarily dictate' that *Davis* has been 'made' retroactively applicable to criminal cases that became final before *Davis* was announced.") These holdings are sufficient to establish that Mr. Webster has made a prima facie showing that he has met the requirements of § 2255(h)(2).

## CONCLUSION

Mr. Webster has made a prima facie showing of possible merit for a claim for relief under 28 U.S.C. § 2255(h)(2). Therefore, he respectfully asks this Court to enter an Order granting him leave to file a successive § 2255 motion in the district court.

16

Respectfully submitted,

s/ F. Italia Patti
INDIANA FEDERAL
COMMUNITY DEFENDERS
111 Monument Circle, Suite 3200
Indianapolis, IN 46204
(317) 383-3520
italia_patti@fd.org

Steven J. Wells
Dorsey & Whitney LLP
Suite 1500, 50 South Sixth Street
Minneapolis, MN 55402-1498
Telephone: (612) 340-2600
wells.steve@dorsey.com

17

## CERTIFICATE OF SERVICE

I hereby certify that on June 1, 2020, I filed this Motion for

Authorization to File Successive Motion Under 28 U.S.C. § 2255 using

the CM/ECF system.

s/ F. Italia Patti

## CERTIFICATE OF COMPLIANCE

Pursuant to <u>5th Cir. R. 22</u>, <u>5th Cir. R. 32.3</u> and <u>Fed. R. App. P. 32(g)(1)</u>, the undersigned certifies that this document complies with the length limitations because, excluding the parts of the document exempted by <u>Fed. R. App. P. 32(f)</u>, this brief contains 3,123 words.

This document complies with the typeface requirements of <u>Fed. R. App. P. 32(a)(5)</u> and the type-style requirements of <u>Fed. R. App. P. 32(a)(6)</u> because this document has been prepared in a proportionally spaced typeface using Microsoft Word in Century 14-point font.

<u>s/ F. Italia Patti</u>

19

Case 4:20-cv-00633-Y     Document 6     Filed 07/02/20     Page 25 of 66     PageID 72

# *United States Court of Appeals*
**FIFTH CIRCUIT**
**OFFICE OF THE CLERK**

**LYLE W. CAYCE**
**CLERK**

**TEL. 504-310-7700**
**600 S. MAESTRI PLACE,**
**Suite 115**
**NEW ORLEANS, LA 70130**

June 02, 2020

Ms. Florence Italia Patti
Indiana Federal Community Defenders
111 Monument Circle
Suite 3200
Indianapolis, IN 46204

   No. 20-10530   In re: Bruce Webster

Dear Ms. Patti,

We have docketed the motion for authorization to file a successive petition, and ask you to use the case number above in future inquiries.

All counsel who desire to appear in this case must electronically file a "Form for Appearance of Counsel" naming all parties represented within 14 days from this date, see FED. R. APP. P. 12(b) and 5TH CIR. R. 12.   This form is available on our website www.ca5.uscourts.gov.   Failure to electronically file this form will result in removing your name from our docket.  Pro se parties are not required to file appearance forms.

ATTENTION ATTORNEYS:  Attorneys are required to be a member of the Fifth Circuit Bar and to register for Electronic Case Filing.  The "Application and Oath for Admission" form can be printed or downloaded from the Fifth Circuit's website, www.ca5.uscourts.gov. Information  on  Electronic  Case  Filing  is  available  at www.ca5.uscourts.gov/cmecf/.

ATTENTION ATTORNEYS:  Direct access to the electronic record on appeal (EROA) for pending appeals will be enabled by the U S District Court on a per case basis.  Counsel can expect to receive notice once access to the EROA is available.  Counsel must be approved for electronic filing and must be listed in the case as attorney of record before access will be authorized.  Instructions for accessing and downloading the EROA can be found on our website at                 http://www.ca5.uscourts.gov/docs/default-source/forms/instructions-for-electronic-record-download-feature-of-cm.  Additionally, a link to the instructions will be included in the notice you receive from the district court.

Sealed documents, except for the presentence investigation report in criminal appeals, will not be included in the EROA.  Access to sealed documents will continue to be provided by the district court

only upon the filing and granting of a motion to view same in this court.

We recommend that you visit the Fifth Circuit's website, www.ca5.uscourts.gov and review material that will assist you during the appeal process. We especially call to your attention the Practitioner's Guide and the 5th Circuit Appeal Flow Chart, located in the Forms, Fees, and Guides tab.

ATTENTION: If you are filing Pro Se (without a lawyer) you can request to receive correspondence from the court and other parties by email and can also request to file pleadings through the court's electronic filing systems. Details explaining how you can request this are available on the Fifth Circuit website at http://www.ca5.uscourts.gov/docs/default-source/forms/pro-se-filer-instructions. This is not available for any pro se serving in confinement.

**Sealing Documents on Appeal:** Our court has a strong presumption of public access to our court's records, and the court scrutinizes any request by a party to seal pleadings, record excerpts, or other documents on our court docket. Counsel moving to seal matters must explain in particularity the necessity for sealing in our court. Counsel do not satisfy this burden by simply stating that the originating court sealed the matter, as the circumstances that justified sealing in the originating court may have changed or may not apply in an appellate proceeding. It is the obligation of counsel to justify a request to file under seal, just as it is their obligation to notify the court whenever sealing is no longer necessary. An unopposed motion to seal does not obviate a counsel's obligation to justify the motion to seal.

Sincerely,

LYLE W. CAYCE, Clerk

By: _____
Monica R. Washington, Deputy Clerk
504-310-7705

cc:  Ms. Leigha Amy Simonton

Provided below is the court's official caption.  Please review the parties listed and advise the court immediately of any discrepancies.  If you are required to file an appearance form, a complete list of the parties should be listed on the form exactly as they are listed on the caption.

———————————————

Case No. 20-10530

In re:  BRUCE CARNEIL WEBSTER,

                Movant

# 20-10530

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

## IN RE BRUCE CARNEIL WEBSTER,
Movant

---

On Appeal from the United States District Court
For the Northern District of Texas
Fort Worth Division
District Court No. 4:94-CR-121-Y-1

---

## RESPONSE OF THE UNITED STATES OF AMERICA
## IN OPPOSITION TO THE APPLICATION FOR LEAVE TO FILE A
## SUCCESSIVE MOTION UNDER 28 U.S.C. § 2255

---

Erin Nealy Cox
United States Attorney

Leigha Simonton
Chief, Appellate Division
Texas Bar No. 24033193

Brian McKay
Deputy Chief, Appellate Division
Texas Bar No. 24046395

Jonathan Bradshaw
Assistant United States Attorney
Colorado Bar No. 43838

U.S. Attorney's Office
Northern District of Texas
1100 Commerce Street, Third Floor
Dallas, Texas 75242
Telephone: 214.659.8660

Attorneys for Appellee

## STATEMENT REGARDING ORAL ARGUMENT

In light of the government's acknowledgments that (1) the rule of *Davis* satisfies AEDPA's gatekeeping standards for successive authorization, and (2) Webster may have made a minimal showing that his proposed claim relies on the rule of *Davis*, oral argument will not benefit this Court as it decides whether to authorize his successive collateral attack.

i

## TABLE OF CONTENTS

**Page**

STATEMENT REGARDING ORAL ARGUMENT.....................................i

TABLE OF AUTHORITIES .......................................................................iv

STATEMENT OF JURISDICTION...........................................................1

STATEMENT OF THE ISSUES ................................................................1

STATEMENT OF THE CASE....................................................................1

    1.    Webster kidnaps, gang-rapes, tortures, and murders 16-year-old
        Lisa Rene in retaliation for a drug debt her brother owed..............1

    2.    This Court affirms Webster's criminal judgment and later
        denies him authorization to file a successive motion under
        28 U.S.C. § 2255 .......................................................................4

    3.    Webster now seeks authorization to file a successive Section 2255
        motion attacking his conviction and 60-month sentence on the
        Section 924(c) count...................................................................5

SUMMARY OF THE ARGUMENT............................................................5

ARGUMENT AND AUTHORITIES..........................................................6

    1.    The rule of *Davis* satisfies 28 U.S.C. § 2255(h)(2). .........................6

    2.    The rule of *Davis* has no impact on Webster's Section 924(c)
        conviction. .................................................................................8

        i.    Webster's Section 924(c) conviction was predicated on
            capital kidnapping resulting in death..................................9

        ii.    Capital kidnapping resulting in death is a crime of violence
            under Section 924(c)'s elements clause..............................9

    3.    Although Webster's position is unmeritorious, this Court has
        held that a *Davis* challenge to a Section 924(c) conviction moored
        to kidnapping satisfied the prima facie showing.........................15

Case 4:20-cv-00633-Y     Document 6     Filed 07/02/20     Page 31 of 66     PageID 78

CONCLUSION.......................................................................................... 17

CERTIFICATE OF SERVICE ................................................................. 18

CERTIFICATE OF COMPLIANCE........................................................ 18

iii

## <u>TABLE OF AUTHORITIES</u>

**Federal Cases**                                                                                                **Page(s)**

*Burrage v. United States*, 571 U.S. 204 (2014)................................................10, 12

*Gonzales v. Duenas-Alvarez*, 549 U.S. 183 (2007) ............................................. 14

*In re Dixon*, 799 F. App'x 308 (5th Cir. 2020) ................................................... 16

*In re Franklin*, 950 F.3d 909 (6th Cir. 2020)...…………………………………….8

*In re Hammoud*, 931 F.3d 1032 (11th Cir. 2019)................................................. 7

*In re Matthews*, 934 F.3d 296 (3d Cir. 2019)...................................................... 8

*In re Mullins*, 942 F.3d 975 (10th Cir. 2019)...................................................... 7

*In re Robinson*, 917 F.3d 856 (5th Cir. 2019),
  *cert denied*, 140 S. Ct. 1128 (2020) ............................................................. 16

*In re Salazar*, 443 F.3d 430 (5th Cir. 2006)...................................................... 16

*In re Sparks*, 657 F.3d 258 (5th Cir. 2011)........................................................ 6

*In re Webster*, 605 F.3d 256 (5th Cir. 2010),
  *cert. denied* 562 U.S. 1091 (2010), ............................................................... 5

*Johnson v. United States*, 559 U.S. 133 (2010) ................................................ 11

*Mathis v. United States*, 136 S. Ct. 2243 (2016) ........................................... 9, 10

*Moncrieffe v. Holder*, 569 U.S. 184 (2013) ....................................................... 14

*Stokeling v. United States*, 139 S. Ct. 544 (2019) ............................................. 11

*Tyler v. Cain*, 533 U.S. 656 (2001).................................................................... 7

*United States v. Castillo-Rivera*, 853 F.3d 218 (5th Cir. 2017)........................... 14

*United States v. Ceron*, 775 F.3d 222 (5th Cir. 2014)....................................... 14

**Federal Cases, continued** ...................................................**Page(s)**

*United States v. Davis*, 139 S. Ct. 2319 (2019) .............................1, 5, 8

*United States v. Hayes*, 589 F.2d 811 (5th Cir. 1979)........................ 12

*United States v. Hill*, 890 F.3d 51 (2d Cir. 2018),
  *cert. denied* 139 S. Ct. 844 (2019).  ............................................... 14

*United States v. Lentz*, 524 F.3d 501 (4th Cir. 2008) ......................... 11

*United States v. Reece*, 938 F.3d 630 (5th Cir. 2019) ........................... 7

*United States v. Reyes-Contreras*, 910 F.3d 169 (5th Cir. 2018) .........10, 11, 12, 14

*United States v. Ruiz-Hernandez*, 890 F.3d 202 (5th Cir. 2018),
  *cert. denied* 139 S. Ct. 278 (2018); ............................................. 10

*United States v. Webster*, 162 F.3d 308 (5th Cir. 1998),
  *cert. denied* 528 U.S. 829 (1999).................................................*passim*

*United States v. Webster*, 392 F.3d 787 (5th Cir. 2004) ....................... 4

*United States v. Wiese*, 896 F.3d 720 (5th Cir. 2018)........................ 16

*Webster v. Lockett*, 2019 WL 2514833 (S.D. Ind. June 18, 2019) ...................... 5

*Welch v. United States*, 136 S. Ct. 1257  (2011) ................................ 7

**Federal Statutes**

18 U.S.C. § 924(c)(1)(A).............................................................. 8

18 U.S.C. § 3591(a)(2)................................................................ 13

28 U.S.C. § 2244(b)(3)(C)............................................................ 15

28 U.S.C. § 2255(h)(2)............................................................ 6, 15

## STATEMENT OF JURISDICTION

Webster seeks leave to file a successive motion under 28 U.S.C. § 2255.

This Court has jurisdiction to rule on his request under 28 U.S.C.

§ 2244(b)(3)(A).

## STATEMENT OF THE ISSUES

1.  Does the rule of *Davis* satisfy the stringent requirements of 28 U.S.C. 2255(h)(2)?

2.  Does *Davis* cast doubt on Webster's firearm conviction, which was predicated on capital kidnapping resulting in death?

3.  Has Webster made at least a prima facie showing that he is entitled to relief under *Davis*?

## STATEMENT OF THE CASE

**1.    Webster kidnaps, gang-rapes, tortures, and murders 16-year-old Lisa Rene in retaliation for a drug debt her brother owed.**

Webster and his coconspirators[1] went to the Polo Run Apartments,

looking to settle a drug debt. *United States v. Webster*, 162 F.3d 308, 318 (5th

Cir. 1998), *cert. denied* 528 U.S. 829 (1999). Webster and another

coconspirator had handguns. *Id.* A third conspirator carried a souvenir bat,

and a fourth had duct tape and a jug of gasoline. *Id.*

---

[1] One of those coconspirators was Orlando Cordia Hall. Like Webster, Hall has also filed an application for successive authorization, relying on the rule of *United States v. Davis*, 139 S. Ct. 2319 (2019), to launch another collateral attack. *See In re Hall*, 19-10345 (5th Cir.). Hall's application is currently pending before this Court.

1

Inside the apartment was Lisa Rene, a 16-year-old high-school student. *Id.* Webster knocked at the front door and demanded entry. *Id.* Rene refused to let him, and she called 9-1-1. *Id.* Webster's coconspirator smashed a sliding-glass door with the bat, and Webster went inside the apartment. *Id.* He tackled Rene and dragged her to a waiting car, where she was raped. *Id.*

Webster and his coconspirators drove Rene from Dallas to Arkansas. *Id.* Along the way, Webster and another man took turns raping her. *Id.* The men rented a hotel room, where they tied Rene to a chair and raped her repeatedly. *Id.*

Webster and another coconspirator went to Byrd Lake Park, where they dug Rene's grave. *Id.* Webster and his coconspirators drove her to the park, but they left when they could not find her grave in the dark. *Id.*

The next morning, they brought Rene back to the park. *Id.* They covered her eyes. *Id.* Webster led the way to the grave, while another man guided her by her shoulders. *Id.* Webster's coconspirator covered her head with a sheet and then hit her in the head with a shovel. *Id.* at 319. She ran, but she was tackled. *Id.* Webster took turns hitting her with the shovel. *Id.* He then gagged her and dragged her into her grave. *Id.* After Webster stripped her, he poured gasoline over her, and buried her, still breathing, to die. *Id.*

2

The United States charged Webster with interstate kidnapping resulting in death, in violation of 18 U.S.C. § 1201(a)(1) (Count One), conspiracy to commit kidnapping (Count Two), traveling in interstate commerce with the intent to promote extortion (Count Five), and using or carrying a firearm during and in relation to a crime of violence (Count Six). *See United States v. Webster*, 4:94-CR-121-Y-1, Dkt. No. 15 (N.D. Tex. Nov. 22, 1994) (Superseding Indictment); *see also Webster*, 162 F.3d at 319. Count Six—the firearm count relevant to Webster's instant collateral attack—alleged that the four named defendants "aided and abetted by each other, did knowingly use and carry, firearms, during and in relation to a crime of violence, namely, kidnapping, in violation of Title 18, United States Code, Section 1201(a)(1) and conspiracy to commit kidnapping, in violation Title 18, United States Code, Section 1201(c)." *Webster*, 4:94-CR-121-Y-1, Dkt. No. 15 at 8.

Webster was tried separately from his codefendants. *Webster*, 162 F.3d at 319. At the guilt phase, the district court instructed the jury as to the elements of Count One:

> First:    That the defendant, knowingly acting contrary to the law, kidnapped, seized, confined, or inveigled the person described in the indictment, Lisa Rene, as charged;
>
> Second:    That the defendant held such person for ransom, reward, or some other benefit that the defendant intended to derive from the kidnapping;

3

> Third:     That the defendant intentionally transported such person in interstate commerce while so kidnapped, confided, or inveigled; and
>
> Fourth:     That the death of Lisa Rene resulted.

*United States v. Webster*, 4:94-CR-121-Y-1, Dkt. No. 862 at 110-11 (N.D. Tex.

June 7, 1996).  The court instructed on Count Six:

> First:     That the defendant committed the crime of interstate kidnapping as alleged in Count One of the Indictment; and
>
> Second:     That the defendant knowingly used or carried a firearm during and in relation to the defendant's commission of the crime of interstate kidnapping.

*Id.* at 114-15.

The government dismissed Count Five, and the jury found Webster

guilty on Counts One, Two, and Six.  *Webster*, 162 F.3d at 319.  Following a

separate sentencing proceeding in front of the same jury, the district court

sentenced Webster to death on Count One, life imprisonment on Count Two,

and a consecutive 60-month prison term on Count Six.  *Id.*

**2.     This Court affirms Webster's criminal judgment and later denies him authorization to file a successive motion under 28 U.S.C. § 2255.**

This Court affirmed Webster's convictions and sentences on direct

appeal.  *See Webster*, 162 F.3d at 317-58.  Webster's first Section 2255 motion

was denied, and this Court declined to grant him a certificate of appealability.

*United States v. Webster*, 392 F.3d 787, 790 (5th Cir. 2004).  After this Court

4

denied an earlier request for successive authorization, *see In re Webster*, 605
F.3d 256 (5th Cir. 2010), *cert. denied* 562 U.S. 1091 (2010), Webster
successfully petitioned for relief under 28 U.S.C. § 2241 in the Southern
District of Indiana, *see Webster v. Lockett*, No. 2:12-CV-86-WTL-MJD, 2019
WL 2514833 (S.D. Ind. June 18, 2019).  A district judge there set aside
Webster's death sentence and ordered the district court in the Northern District
of Texas to resentence him.  *See id.* at *11.  The United States is now appealing
that ruling to the Seventh Circuit.  *See Webster v. Watson*, No. 19-2683 (7th
Cir.).

**3.      Webster now seeks authorization to file a successive Section 2255
         motion attacking his conviction and 60-month sentence on the Section
         924(c) count.**

Webster now seeks authorization to file a successive Section 2255
motion.  (Motion at 16.)  He relies on *United States v. Davis*, 139 S. Ct. 2319
(2019), to trigger 28 U.S.C. §2255(h)(2).  (Motion at 1.)  His theory is that his
Section 924(c) conviction was predicated on the now invalid residual clause, so
that conviction and his 60-month sentence must be set aside.  (Motion at 9.)

## SUMMARY OF THE ARGUMENT

Webster is correct that the rule of *Davis* satisfies the stringent
requirements of Section 2255(h)(2).  But Webster in no way benefits from the
rule of *Davis*.  Webster's Section 924(c) conviction was predicated on capital

5

death-results kidnapping.  Because that crime satisfies Section 924(c)'s elements clause, *Davis*—which invalidated the residual clause—had no impact on Webster's conviction.  He cannot rely on the rule of *Davis* to set aside his Section 924(c) conviction, so this Court should deny his application for successive authorization.

Nevertheless, the government recognizes that Webster might have made a minimal, prima facie showing that his proposed claim relies on the rule of *Davis*.  If so, this Court should authorize Webster to return to the district court to press his *Davis* claim.

## ARGUMENT AND AUTHORITIES

Before Webster can file a successive collateral attack under Section 2255, this Court must certify that his proposed claim for relief is "premised" on a "new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable."  *In re Sparks*, 657 F.3d 258, 260 (5th Cir. 2011); *accord* 28 U.S.C. § 2255(h)(2).

**1.    The rule of *Davis* satisfies 28 U.S.C. § 2255(h)(2).**

The rule of *Davis* is one of the rare rules that satisfies the stringent requirements of Section 2255(h)(2).[2]  Although in *Davis* itself "[t]he Court did

---

[2] In *In re Hall*, No. 19-10345 (5th Cir.), this Court invited amicus to argue "in support of the view that we should deny the petition [for successive authorization] because the Supreme Court has not yet held that *Davis* applies retroactively, as AEDPA requires under 28 U.S.C.

6

not state whether *Davis* would apply retroactively," *United States v. Reece*, 938

F.3d 630, 635 (5th Cir. 2019), the Supreme Court has necessarily dictated that

*Davis* is retroactive under the Court's rubric set out in *Tyler v. Cain*, 533 U.S.

656 (2001).  There, the Supreme Court recognized that it could make a rule

retroactive within the meaning of 28 U.S.C. § 2244 "with the right

combination of holdings."  *Id.* at 666.  "Multiple cases can render a new rule

retroactive only if the holdings in those cases necessarily dictate retroactivity of

the new rule."  *Id.*

   Applying the principles from *Tyler*, the Supreme Court has necessarily

made the rule of *Davis* retroactive.  "The rule announced in *Davis* meets the

standard for a new substantive rule."  *Reece*, 938 F.3d at 635.  "That conclusion

is reinforced by *Welch* [*v. United States*, 136 S. Ct. 1257 1257 (2011)]."  *Id.*  The

rule of *Davis* "narrows the scope of conduct for which punishment is now

available," *Reece*, 938 F.3d at 635, and such "substantive" rules "have

retroactive effect in cases on collateral review," *Welch*, 136 S. Ct. at 1268.  *In re*

*Mullins*, 942 F.3d 975, 979 (10th Cir. 2019) (concluding that "the Supreme

Court has made *Davis* retroactively applicable to cases on collateral review");

*In re Hammoud*, 931 F.3d 1032, 1039 (11th Cir. 2019) ("[F]or purposes of

---

§ 2255(h)(2)."  Amicus filed a brief in support of that view, and Hall and the United States
have filed briefs in response.

§ 2255(h)(2), we conclude that, taken together, the Supreme Court's holdings in *Davis* and *Welch* 'necessarily dictate' that *Davis* has been 'made' retroactively applicable to criminal cases that became final before *Davis* was announced.").[3]

**2.    The rule of *Davis* has no impact on Webster's Section 924(c) conviction.**

Section 924(c) criminalizes using or carrying a firearm during and in relation to "any crime of violence." 18 U.S.C. § 924(c)(1)(A). Section 924(c) defines the phrase "crime of violence" in two, alternative provisions. Section 924(c)(3)(A) defines it as a felony that "has an element the use, attempted use, or threatened use of physical force against the person or property of another." This subsection is known as the "elements clause." Section 924(c)(3)(B) defines "crime of violence" as a felony "that[,] by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." This subsection is known as the "residual clause." *Davis*, 139 S. Ct. 2323-24. In *Davis*, the Supreme Court struck down as unconstitutionally vague the residual clause. Id. at 2336. But *Davis* has no impact on Section 924(c)(3)(A)'s definition of "crime of violence" under the elements clause.

---

[3] *See also In re Franklin*, 950 F.3d 909, 911 (6th Cir. 2020) (same); *In re Matthews*, 934 F.3d 296, 298 (3d Cir. 2019) (holding that it is "undisputed" that *Davis* satisfies Section 2255(h)(2) under the Third Circuit's gatekeeping standards).

### i.   Webster's Section 924(c) conviction was predicated on capital kidnapping resulting in death.

*Davis* had no impact on Webster's conviction on Count Six because his predicate crime of violence—capital kidnapping resulting in death under 18 U.S.C. § 1201(a)—qualifies as a "crime of violence" under Section 924(c)(3)(A)'s elements clause: it has as an element the use, attempted use, or threatened use of physical force against the person or property of another. To argue otherwise, Webster's application for successive authorization claims that his Section 924(c) conviction was predicated on either death-results kidnapping or conspiracy to commit kidnapping and that neither of those offenses satisfies the elements clause. (Motion at 8-9.) Although the superseding indictment mated Webster's firearm offense to death-results kidnapping or conspiracy to commit kidnapping, *Webster*, 4:94-CR-121-Y-1, Dkt. No. 15 at 8, the district court's instructions directed the jury to consider only the substantive kidnapping charge, *Webster*, 4:94-CR-121-Y-1, Dkt. 862 at 114-15. There is no doubt in this record, then, that Webster's firearm offense was predicated on capital kidnapping resulting in death.

### ii.   Capital kidnapping resulting in death is a crime of violence under Section 924(c)'s elements clause.

To determine whether an offense falls within the elements clause, courts generally apply a "categorical approach." *See, e.g.*, *Mathis v. United States*, 136

9

S. Ct. 2243, 2248 (2016) (describing categorical approach in context of Armed Career Criminal Act). Where, as here, the statute of conviction lists multiple alternative elements, as opposed to alternative means of committing a single element, it is "divisible" into different offenses. *Id.* at 2249. To classify a conviction under a divisible statute, a court may "look[ ] to a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, [the] defendant was convicted of." *Id.*; *see United States v. Reyes-Contreras*, 910 F.3d 169, 174 (5th Cir. 2018) (en banc).

Webster implicitly acknowledges that the kidnapping statute is divisible. (*See* Motion at 8-9 (acknowledging that the jury must find that a death resulted).) Because the death-results provision of the kidnapping statute triggers an enhanced penalty, 18 U.S.C. § 1201(a) (increasing the sentencing range if "the death of any person results"), that provision is an element of the aggravated offense of kidnapping resulting in death. *See Burrage v. United States*, 571 U.S. 204, 210 (2014) ("Because the 'death results' [penalty] enhancement [in 21 U.S.C. § 841(b)] increased the minimum and maximum sentences to which Burrage was exposed, it is an element that must be submitted to the jury and found beyond a reasonable doubt."); *United States v. Ruiz-Hernandez*, 890 F.3d 202, 210 (5th Cir. 2018) ("resulting-in-death element"

10

in 8 U.S.C. § 1324(a)(1)(B)(iv) "increases the applicable statutory maximum sentence and thus must be submitted to the jury and found beyond a reasonable doubt"), *cert. denied* 139 S. Ct. 278 (2018); *United States v. Lentz*, 524 F.3d 501, 512 (4th Cir. 2008) ("death resulted" is an essential element of the offense of kidnaping resulting in death).  The kidnapping statute is therefore divisible into different offenses—kidnapping that does not result in death and kidnapping that does result in death.  And the jury found Webster guilty of kidnapping that resulted in the death of Lisa Rene and of carrying a firearm during that crime of violence.  *Webster*, 4:94-CR-121-Y-1, Dkt. No. 862 at 110-11, 114-15.

Moreover, kidnapping resulting in death has as an element the use, attempted use, or threatened use of physical force against the person or property of another.  "Physical force" in this context means "force capable of causing physical pain or injury to another person," *Johnson v. United States*, 559 U.S. 133, 140 (2010) (interpreting analogous provision of the Armed Career Criminal Act), including any "amount of force necessary to overcome a victim's resistance[.]"  *See also Stokeling v. United States*, 139 S. Ct. 544, 555 (2019).  The force may be applied by someone other than the defendant, *see Reyes-Contreras*, 910 F.3d at 182; it may be indirect and involve no actual bodily contact, *see id.* at 180-82, 184; and it need not be intentional, *see id.* at 183 ("the

11

'use of force' does not require intent because it can include knowing or reckless conduct").

Under *Reyes-Contreras*, to prove the offense of kidnapping resulting in death, the government will virtually always have to prove that the victim was subjected to "physical force" within the meaning of Section 924(c)(3)(A). *See* 910 F.3d at 187 n.38. The requirement that "death results" from the kidnapping requires a causal connection between the kidnapping and the death; it would not be sufficient, for example, to show that the victim happened to die of natural causes during the course of a kidnapping. *See id.*; *see also Burrage*, 571 U.S. at 214 ("a phrase such as 'results from' imposes a requirement of but-for causation"); *United States v. Hayes*, 589 F.2d 811, 821 (5th Cir. 1979) (holding that the "death results" provision of 18 U.S.C. § 242 incorporates general principles of causation and noting that death would not "result" from a Section 242 violation if the victim is struck by lightning while being detained pursuant to an illegal arrest). And establishing that connection will virtually always require proof that force capable of causing physical pain or injury or of overcoming a victim's resistance was used during the course of the commission of the offense—whether or not the force was direct or intentional. *See Reyes-Contreras*, 910 F.3d at 180-84.

12

Indeed, where, as here, kidnapping resulting in death is charged as a capital offense, to return a recommendation of death the jury necessarily must find that the defendant intentionally killed his victim; intentionally inflicted serious bodily injury that resulted in his victim's death; intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person and the victim died as a result of the act; or intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person such that participation in the act constituted a reckless disregard for human life and the victim died as a direct result of the act. *See* 18 U.S.C. § 3591(a)(2); *see also Webster*, 162 F.3d at 319 (" After the penalty phase, the jury returned special findings that Webster satisfied the requisite elements of intent" under Section 3591(a).)

All of those statutory aggravating factors entail intentional conduct that caused a victim's death. Capital kidnaping resulting in death, therefore, categorically has as an element—imported from 18 U.S.C. § 3591(a)(2)—the use, attempted use, or threatened use of physical force against the person or property of another because no defendant can be found guilty of that offense without a finding that he used force capable of causing physical pain or injury against another person.

13

The existence of possible hypothetical scenarios in which death might result from a kidnapping without the use of "physical force" does not change the categorical analysis under Section 924(c)(3)(A). The Supreme Court and this Court have cautioned against using "legal imagination" to treat an offense as categorically overbroad. *See Moncrieffe v. Holder*, 569 U.S. 184, 191 (2013) (internal quotation marks omitted); *id.* ("there must be 'a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime'") (quoting *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007)); *Reyes-Contreras*, 910 F.3d at 187 ("A more realistic approach comports with reason and common sense."); *United States v. Ceron*, 775 F.3d 222, 229 (5th Cir. 2014) (per curiam) (reliance on a "clever hypothetical" to show that an offense can be committed without the use of force "is the type of argument the Supreme Court has instructed [courts] to avoid crediting"). Webster would need to point this Court to at least one case in which a court found the death-results element of kidnapping resulting in death where there was no application of "physical force." *See United States v. Castillo-Rivera*, 853 F.3d 218, 223 (5th Cir. 2017) (en banc) (construing *Duenas-Alvarez*, 549 U.S. at 193); *United States v. Hill*, 890 F.3d 51, 56 (2d Cir. 2018) ("[T]here must be a realistic probability, not a theoretical possibility, that the statute at issue could be applied to conduct that does not constitute a crime of

14

violence.  To show that a particular reading of the statute is realistic, a defendant must at least point to his own case or other cases in which the courts in fact did apply the statute in the manner for which he argues.  To that end, the categorical approach must be grounded in reality, logic, and precedent, not flights of fancy.") (cleaned up), *cert. denied* 139 S. Ct. 844 (2019).  Webster's case is no example, and he has not offered another example here.[4]  And as explained above, no such case could exist in the capital context, where kidnaping resulting in death must always include the additional element of intentional violence.

Because Webster's Section 924(c) conviction is predicated on a crime of violence under the elements clause, *Davis* cannot pave the way to the relief that Webster seeks.  His request for authorization should be denied.

3.     **Although Webster's position is unmeritorious, this Court has held that a *Davis* challenge to a Section 924(c) conviction moored to kidnapping satisfied the prima facie showing.**

At this stage, the Court may authorize Webster's successive Section 2255 motion only if his application makes a prima facie showing that his claim relies on the new rule of constitutional law that has been made retroactive by the Supreme Court.  28 U.S.C. §§ 2244(b)(3)(C), 2255(h)(2).  This showing does not require the Court to fully resolve the claim's merits: "A 'prima facie

---

[4] In his proposed Section 2255 motion, Webster offers up only hypotheticals.  (Proposed Successive Motion at 23 (arguing that "one can easily *imagine* realistic scenarios").)

15

showing' is simply a sufficient showing of possible merit to warrant a fuller exploration by the district court." *In re Robinson*, 917 F.3d 856, 868 (5th Cir. 2019) (quotation marks omitted), *cert denied*, 140 S. Ct. 1128 (2020). "That standard is satisfied where the movant puts forth minimally sufficient evidence to make a prima facie case such that there is sufficient, albeit slight, merit in the petitioner's motion to warrant further exploration by the district court." *Id.* (quotation marks and alterations omitted). That is not to say that a prima facie showing precludes all consideration of the merits. *See In re Salazar*, 443 F.3d 430, 431-34 (5th Cir. 2006) (considering whether defendant made a prima facie showing of mental retardation). Simply alleging that the claim is based on the new Supreme Court decision is not enough. *See id.* (scrutinizing claim of mental retardation). And a defendant has to make a sufficient showing that the new decision actually comes into play in their case—more than just that it possibly did. *See, e.g.*, *United States v. Wiese*, 896 F.3d 720, 724 (5th Cir. 2018).

Webster has failed to make that showing. Although the rule of *Davis* satisfies Section 2255(h)(2), *Davis* does not benefit Webster for the reasons set out above.

The government recognizes, however, that this Court recently authorized the successive motion of an applicant seeking to challenge his Section 924(c) conviction attached to a generic kidnapping count. *See In re*

16

*Dixon*, 799 F. App'x 308, 309 (5th Cir. 2020).  The aggravated offense of capital kidnapping causing death is meaningfully different; however, neither this Circuit nor any of its sister circuits has yet addressed whether that offense is a crime of violence under 18 U.S.C. § 924(c)(3)(A).  In light of this, the government recognizes that the Court might find that Webster has satisfied the minimal prima facie showing required to satisfy Section 2255(h).

## CONCLUSION

If this Court finds that Webster has made a prima facie showing of relief under *Davis*, the Court should authorize his successive Section 2255 motion.

Respectfully submitted,

Erin Nealy Cox
United States Attorney

*s/ Jonathan Bradshaw*
Jonathan Bradshaw
Assistant United States Attorney
Colorado Bar No. 43838
1100 Commerce Street, Third Floor
Dallas, Texas 75242
Telephone: (214) 659-8600
jonathan.bradshaw@usdoj.gov

Attorneys for Appellee

17

## CERTIFICATE OF SERVICE

I certify that this document was served on counsel for Webster, Florence Italia Patti, through the Court's ECF system on June 23, 2020, and that: (1) any required privacy redactions have been made; (2) the electronic submission is an exact copy of the paper document; and (3) the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses.

*s/ Jonathan Bradshaw*
Jonathan Bradshaw

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 3,824 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Calisto MT font.

*s/ Jonathan Bradshaw*
Jonathan Bradshaw
Assistant United States Attorney
Date: June 23, 2020

No. 20-10530

---

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

IN RE BRUCE CARNEIL WEBSTER,

Movant.

---

## CAPITAL CASE

REPLY IN SUPPORT OF MOTION FOR AUTHORIZATION
TO FILE SUCCESSIVE MOTION PURSUANT TO 28 U.S.C. § 2255
IN LIGHT OF *UNITED STATES V. DAVIS*, 139 S. CT. 2319 (2019)

---

Dorsey & Whitney LLP
Steven J. Wells
Suite 1500, 50 South Sixth Street
Minneapolis, MN 55402-1498
Telephone: (612) 340-2600
wells.steve@dorsey.com

INDIANA FEDERAL COMMUNITY DEFENDERS
Monica Foster, Executive Director
By F. Italia Patti, Assistant Federal Defender
111 Monument Circle, Suite 3200
Indianapolis, IN 46204
(317) 383-3520
italia_patti@fd.org

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ii

INTRODUCTION ........................................................................................... 1

I. The record in this case is not clear that kidnapping resulting in death, rather than conspiracy to commit kidnapping, was the predicate for Mr. Webster's § 924(c) conviction. ................................................................. 2

II. Kidnapping resulting in death is not a crime of violence under § 924(c)'s elements clause ........................................................................ 5

   A. Kidnapping resulting in death does not have use of force as an element, regardless of what a jury must find to sentence a defendant to death. ....................................................................................... 6

   B. There are realistic scenarios where kidnapping resulting in death does not involve the use of force. ........................................................ 8

CONCLUSION ............................................................................................ 10

CERTIFICATE OF SERVICE .......................................................................... 11

CERTIFICATE OF COMPLIANCE ................................................................... 12

# TABLE OF AUTHORITIES

## Cases

*Leocal v. Ashcroft*, 543 U.S. 1 (2004) ...................................................... 9

*Moncrieffe v. Holder*, 133 S. Ct. 1678 (2013) ............................................ 7

*Shepard v. United States*, 544 U.S. 13 (2005) ............................... 3, 4, 5, 6

*United States v. Amaya*, 576 F. App'x 416 (5th Cir. 2014) ...................... 7

*United States v. Aparicio-Soria*, 740 F.3d 152 (4th Cir. 2014) ............... 10

*United States v. Clay*, 627 F.3d 959 (4th Cir. 2010) ................................. 2

*United States v. Davis*, 139 S. Ct. 2319 (2019) ......................................... 1

*United States v. Gonzalez-Chavez*, 432 F.3d 334 (5th Cir. 2005) ............ 2

*United States v. Hayes*, 589 F.2d 811 (5th Cir. 1979) .............................. 9

*United States v. McCall*, No. 3:10CR170-HEH, 2019 WL 4675762 (E.D.
    Va. Sept. 25, 2019) ................................................................................. 5

*United States v. McDuffy*, 890 F.3d 796 (9th Cir. 2018) ........................ 10

*United States v. Reece*, 938 F.3d 630 (5th Cir. 2019) .............................. 5

*United States v. Reyes-Contreras*, 910 F.3d 169 (5th Cir. 2018) ............. 9

*United States v. Rodriguez*, 94 Cr. 313 (CSH), 2020 WL 1878112
    (S.D.N.Y. Apr. 15, 2020) ....................................................................... 5

*United States v. Sanford*, 779 F. App'x 568 (10th Cir. 2019) .................. 6

*United States v. Vann*, 660 F.3d 771 (4th Cir. 2011) .............................. 3

## Statutes

18 U.S.C. § 3591(a)(2) ............................................................................... 7

18 U.S.C. § 3593(e) .................................................................................... 8

18 U.S.C. § 924(c) ............................................................................. passim

## INTRODUCTION

The Government all but acknowledges that Mr. Webster has made a prima facie showing that *United States v. Davis*, <u>139 S. Ct. 2319</u> (2019), invalidates his § 924(c) conviction. *See* Resp. at 5–6, 17. The Government's arguments certainly do not establish that Mr. Webster failed to make a prima facie showing. Although the Government's arguments are irrelevant the question at hand, whether Mr. Webster has made a prima facie showing, in reply to these arguments, Mr. Webster emphasizes the following:

First, the record in this case is not clear that kidnapping resulting in death, rather than conspiracy to commit kidnapping, was the predicate for his § 924(c) conviction. Consequently, because conspiracy to commit kidnapping is not a crime of violence under § 924(c)'s elements clause, Mr. Webster's § 924(c) conviction is invalid regardless of whether kidnapping resulting in death is a crime of violence.

Second, kidnapping resulting in death is also not a crime of violence under § 924(c)'s elements clause, despite the Government's arguments to the contrary.

**I. The record in this case is not clear that kidnapping resulting in death, rather than conspiracy to commit kidnapping, was the predicate for Mr. Webster's § 924(c) conviction.**

The Government incorrectly argues that "[t]here is no doubt in this record, then, that Webster's firearm offense was predicated on capital kidnapping resulting in death." Resp. at 9. As the Government acknowledges, the indictment alleges both conspiracy to commit kidnapping and kidnapping resulting in death as predicates for the § 924(c) charged in Count Six. *Id.* Yet the Government argues that the jury instructions made clear that the jury should consider only the kidnapping charge. *Id.* That is incorrect. The jury instructions are ambiguous.

The Government does not mention the applicable standard, which is stringent. "[P]lausibility or even likelihood" that the defendant was convicted of § 924(c) based on a qualifying "crime of violence" is not enough. *United States v. Clay*, 627 F.3d 959, 966 (4th Cir. 2010); *see also United States v. Gonzalez-Chavez*, 432 F.3d 334, 338 (5th Cir. 2005). If one of the alternate predicates to a § 924(c) charge is not a crime of violence, the § 924(c) conviction cannot stand without "certainty" that the conviction was premised on a crime-of-violence

2

predicate. *See Shepard v. United States*, 544 U.S. 13, 21–23 (2005); *see also United States v. Vann*, 660 F.3d 771, 774 (4th Cir. 2011) (en banc) ("[I]t has been established that a defendant convicted under a conjunctively charged indictment cannot be sentenced—in the absence of a special verdict identifying the factual bases for conviction—to a term of imprisonment exceeding the statutory maximum for the 'least-punished' of the disjunctive statutory conduct.").[1]

The ambiguous jury instructions in this case do not meet the demanding standard of establishing with "certainty" that Mr. Webster's § 924(c) conviction was "necessarily" premised on kidnapping resulting in death rather than conspiracy. *Shepard*, 544 U.S. at 21–23.

True enough that the jury instructions first say that to find Mr. Webster guilty on Count Six, the jury must find "[t]hat the defendant knowingly used or carried a firearm during and in relation to the

---

[1] In this case, neither predicate is a crime of violence under § 924(c)'s elements clause. The reasons why kidnapping resulting in death is not a crime of violence under § 924(c)'s elements clause are discussed in Mr. Webster's proposed successive § 2255 motion, and below. The point here, though, is that regardless of whether kidnapping resulting in death is a crime of violence, Mr. Webster's § 924(c) conviction is invalid because conspiracy to commit kidnapping is not a crime of violence, and it is not clear whether the jury relied on conspiracy or kidnapping when convicting Mr. Webster on the § 924(c) charged in Count Six.

defendant's commission of the crime of interstate kidnapping." Tr. vol.

21A 115:3–5.

Immediately after, the instructions discuss conspiracy. They

conclude the discussion of conspiracy by saying:

> [I]f you have first found a defendant guilty of the conspiracy
> charged in Count 2 of the indictment, and if you find beyond a
> reasonable doubt that . . . during the time that defendant was a
> member of that conspiracy, another conspirator committed the
> offenses in Counts 1 and 6 in furtherance of or as a foreseeable
> consequence of that conspiracy, then you may find the defendant
> guilty of Counts 1 and 6, even though the defendant may not have
> participated in any of the acts which constitute the offense
> described in Counts 1 and 6.

Tr. vol. 21A 117:20–118:4 (emphasis added).

These instructions tell the jurors that they can find Mr. Webster

guilty of the § 924(c) charged in Count Six by finding him guilty of

conspiracy. At the very least, these instructions do not establish with

"certainty" that jurors did not predicate their § 924(c) conviction on

conspiracy. See Shepard, 544 U.S. at 21–23; see also United States v.

Rodriguez, 94 Cr. 313 (CSH), 2020 WL 1878112, at *7–10, 17 (S.D.N.Y.

Apr. 15, 2020) (in a case where one of the potential predicates for a

§ 924(c) charge was conspiracy, and the jury was instructed that a

conspirator could be held responsible for co-conspirators' actions,

4

holding that the § 924(c) conviction was invalid in light of *Davis*);

*United States v. McCall*, No. 3:10CR170-HEH, 2019 WL 4675762, at

*6–7 (E.D. Va. Sept. 25, 2019) (in a case where the jury was instructed

that the defendant could commit the predicate offence by doing the

actions specified in the statute or "conspiring to commit those offenses,"

holding that there was no valid predicate for the § 924(c) conviction).

Of course, conspiracy to commit kidnapping is not a crime of

violence under the elements clause. *See United States v. Reece*, 938

F.3d 630, 635 (5th Cir. 2019); *United States v. Sanford*, 779 F. App'x

568, 570 (10th Cir. 2019).

Therefore, the jury instructions do not establish with "certainty"

that Mr. Webster's § 924(c) conviction was "necessarily" based on

kidnapping rather than conspiracy. *Shepard*, 544 U.S. at 21–23.

Because conspiracy to commit kidnapping is not a crime of violence, this

ambiguity means that Mr. Webster's § 924(c) conviction is invalid.

## II. Kidnapping resulting in death is not a crime of violence under § 924(c)'s elements clause.

Although Mr. Webster's § 924(c) conviction is invalid solely

because conspiracy to commit kidnapping is not a crime of violence,

kidnapping resulting in death is not a crime of violence, either.

5

## A. Kidnapping resulting in death does not have use of force as an element, regardless of what a jury must find to sentence a defendant to death.

The Government's main argument is that "capital kidnapping resulting in death" categorically requires force because, at the *penalty phase*, in order to sentence a defendant to death, the jury must find that he used force. Resp. at 13.

The categorical approach undermines this argument. The categorical approach requires courts to look at the least culpable conduct that could lead to a conviction—not the conduct that is necessary for a death sentence. *See United States v. Amaya*, 576 F. App'x 416, 419 (5th Cir. 2014) (quoting *Moncrieffe v. Holder*, 133 S. Ct. 1678, 1684 (2013)).

Logic also undermines the Government's argument. The Government's premise is that, "where, as here, kidnapping resulting in death is charged as a capital offense, *to return a recommendation of death* the jury necessarily must find that the defendant" used force. Resp. at 13 (emphasis added) (citing 18 U.S.C. § 3591(a)(2)).

Based on that premise, the Government concludes:

Capital kidnaping resulting in death, therefore, categorically has as an element—*imported* from 18 U.S.C. § 3591(a)(2)—the use, attempted use, or threatened use of physical force against the

6

person or property of another because *no defendant can be found guilty of that offense* without a finding that he used force capable of causing physical pain or injury against another person.

Resp. at 13 (emphasis added).

But this conclusion—"no defendant *can be found guilty*" of kidnapping resulting in death "without a finding that he used force"— does not follow from the premise—"*to return a recommendation of death*" the jury must find that the defendant used force. *Id.* (emphasis added). The conclusion is about the requirement for a *conviction*. But the premise is about the requirement for a *death sentence*.

There would be serious implications if, as the Government tries to argue, the findings required for a *death sentence* were also required for a *conviction*. For one thing, it would mean that if a jury convicted a defendant of a crime, but in the penalty phase found that he did not use force, the penalty-phase finding would invalidate the conviction.

The implications go beyond the use of force. For example, no defendant can be sentenced to death without a penalty-phase finding that the aggravating factors outweigh the mitigating factors. *See* 18 U.S.C. § 3593(e). Based on the Government's argument here, a defendant could not be convicted of any death-eligible offense unless the

7

jury made a penalty-phase finding that the aggravating factors outweigh the mitigating factors. Obviously, this is an absurd proposition.

In short, the Government's attempt to import requirements necessary for a *death sentence* into the elements of a *conviction* makes no sense logically, and has no support in the law.

## B. There are realistic scenarios where kidnapping resulting in death does not involve the use of force.

The Government is also incorrect that there are not realistic scenarios in which death might result from a kidnapping without the use of force. *See* Resp. at 14.

In *United States v. Hayes*, the Fifth Circuit made abundantly clear that "[n]o matter how you slice it, 'if death results' does not mean 'if death was intended.'" 589 F.2d 811, 821 (5th Cir. 1979). Use of force, though, requires "a higher degree of intent than negligent or merely accidental conduct." *Leocal v. Ashcroft*, 543 U.S. 1, 9 (2004).[2] That is enough to establish that a defendant can commit kidnapping resulting in death without using force. *See United States v. Aparicio-Soria*, 740

---

[2] *United States v. Reyes-Contreras*, 910 F.3d 169 (5th Cir. 2018) (en banc) does not hold otherwise. It did not overrule *Hayes* and of course did not overrule *Leocal*, a Supreme Court case.

F.3d 152, 157 (4th Cir. 2014) (en banc) (holding that when precedent establishes that the elements of an offense do not include "an element of violent force," it "does not require an exercise of imagination, merely mundane legal research skills" to determine that the offense is not a crime of violence under an elements clause).

And, as one example, in *United States v. McDuffy*, the Ninth Circuit concluded that the "enhanced punishment for an individual who kills a person in the course of committing a bank robbery . . . applies even when the bank robber *accidentally* kills someone." 890 F.3d 796, 797 (9th Cir. 2018) (emphasis added). The Ninth Circuit affirmed McDuffy's conviction for bank robbery in which a death resulted, although the death was accidental. *Id.* at 801–02.

Moreover, the realistic hypotheticals that Mr. Webster cites are not particularly "imaginati[ve]" or "clever." Resp. at 14. Realizing that a kidnapping could lead to a fatal car crash and charges for kidnapping resulting in death, for example, does not require much imagination.

Therefore, the Government's arguments are unavailing, kidnapping resulting in death is not a crime of violence under § 924(c)'s elements clause, and Mr. Webster's § 924(c) conviction is invalid.

## CONCLUSION

For the reasons explained in this Reply and the in the Motion for Authorization and proposed successive § 2255 motion, Mr. Webster has made a prima facie showing of possible merit for a claim for relief under 28 U.S.C. § 2255(h)(2). He respectfully asks this Court to grant him leave to file a successive § 2255 motion in the district court.

Respectfully submitted,

s/ F. Italia Patti
INDIANA FEDERAL
COMMUNITY DEFENDERS
111 Monument Circle, Suite 3200
Indianapolis, IN 46204
(317) 383-3520
italia_patti@fd.org

Steven J. Wells
Dorsey & Whitney LLP
Suite 1500, 50 South Sixth Street
Minneapolis, MN 55402-1498
Telephone: (612) 340-2600
wells.steve@dorsey.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 30, 2020, I filed this Reply in

Support of Motion for Authorization to File Successive Motion Pursuant

to 28 U.S.C. § 2255 and in Light of *United States v. Davis*, 139 S. Ct.

2319 (2019), using the CM/ECF system.

s/ F. Italia Patti

## CERTIFICATE OF COMPLIANCE

Pursuant to 5th Cir. R. 22 and Fed. R. App. P. 32(a)(7)(b)(ii), the undersigned certifies that this document complies with the length limitations because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this reply contains 1,969 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in Century 14-point font.

s/ F. Italia Patti